Forestdale Heights, Inc. v. Essex Junction Sch. Dist., No. S0215-08 CnC (Toor, J., May 5, 2010)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
CHITTENDEN COUNTY

| | |
|---|---|
| FORESTDALE HEIGHTS, INC.<br> Plaintiff<br><br>v.<br><br>ESSEX JUNCTION SCHOOL DISTRICT<br> Defendant | SUPERIOR COURT<br>Docket No. S0215-08 CnC |

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

This is a dispute arising out of an error in the creation or filing of a deed to land in Essex Junction. A court trial was held on April 8; post-trial filings were complete April 29. Plaintiff was represented by Carl Lisman, Esq. and Adam Bergeron, Esq.; Defendants were represented by Christopher Roy, Esq. and Joseph Farnham, Esq. The witnesses at the hearing were Hector LeClair and Brooke Scatchard.

Findings of Fact

In 1978, an entity by the name of Forestdale Heights, Inc., a land development company, sold to the Essex Junction School District a parcel of land the parties refer to as the Saxon Hill Forest. It is comprised of approximately 90 acres of mostly forested land. Hector LeClair was one of the principals in Forestdale at the time. He and his three partners were all involved in the negotiations to some extent. The sale to the school district was in conjunction with Forestdale's purchase of 680 acres from the Village of Essex, with the 90 acres being a portion thereof.

This case has made its way to the courthouse doors because, unfortunately, the deed that was recorded with the Town Clerk was missing some language. The relevant section reads as follows:

> Forestdale Heights, Inc., for itself, its successors and assigns, also hereby grants to the Essex Junction School District, its successors and assigns, an easement 15 feet in width for use by the Essex Junction School District and its guests, over the extension of the Saxon Hill Road, so-called for the purpose of pedestrian and vehicular access to the lands hereby conveyed, to the intersection thereof with the road crossing Saxon Hill.

> lands conveyed herein shall be for public usage for conservation/recreation and educational purposes only.

Exhibit 1, pp. 1-2. The missing language is, obviously, that preceding the word "lands." That word starts the second page of the deed, suggesting either that a portion of the page was missed in photocopying or that it was dropped in the typing.

Forestdale has offered in evidence a different version of the deed with an identical first page but an entirely different second page. That page also starts midsentence. It reads as follows:

> that Forestdale Heights, Inc., its successors and assigns, reserves the right to relocate, redesignate or eliminate any such road, roadway or path so long as such action does not unreasonably or unnecessarily impede the Essex Junction School District or its guests from obtaining access to or from the lands benefitted by this grant.

> It is an express condition of this conveyance that the lands conveyed herein shall be used for conservation/recreation and educational purposes only, and any use not so conforming shall work a forfeiture to Forestdale Heights, Inc., or its successors or assigns.

Exhibit 2, p. 2.

Both versions of the deed are signed and dated in the same fashion and on the same date, August 15, 1978. No explanation has been offered by the parties for the two different versions of the deed, but it is apparent that neither is complete. Mr. LeClair testified that although he is the current custodian of Forestdale's business records, some of the old files were burned in a fire. Likewise, counsel who prepared the deed (Attorney

2

Lisman's office) have been unable to locate the law firm's file from that time period, over thirty years ago. Exhibit 2 came from Forestdale's files.

LeClair testified that Exhibit 2, not Exhibit 1, describes the arrangement he recalls. However, he did not offer a great deal of detail or explanation. He has "no idea" how what he believes to be the wrong deed got recorded. However, he assumes that it would have been the buyer – the School District – that would have recorded the deed. He also has no explanation for the missing language in Exhibit 2.

In 2004, the School District leased the parcel to the Town of Essex for a twenty-five year period. The lease specifies that the Town may use the land "for conservation, recreational and educational purposes only." Exhibit 4. LeClair believes that transferring management of the property to the Town constituted an event that triggers forfeiture of the property requiring that it be returned to Forestdale. He states that the intent of the original sale to the School District was "for education" and "for the kids to learn about forestry." He does not believe management by the Town is the same as that by the School District. However, he agrees neither deed says that a sale or lease of the property requires forfeiture. In addition, although he testified to his intent that the School keep the property, he did not testify that such intent was ever conveyed to the School District or agreed to by it.

The court also notes that in a 2004 letter from Forestdale's counsel to the Town, it is represented that the 90 acres was conveyed to the School District because the Town required Forestdale to do so, not out of the goodness of the company's heart. *See* Exhibit 5 ("as part of a condition imposed upon it by the Village of Essex Junction, [Forestdale] transferred approximately 90 acres of the Park to the Essex Junction School District").

3

This creates some question as to the true intent of Forestdale at the time of the conveyance.

Undercutting LeClair's claim that Forestdale did not intend to allow the School District to lease or sell the property is the deed language (in both versions of the deed) referring to the School District's "successors and assigns." Exhibit 1, p. 1; Exhibit 2, p.1. This clearly indicates that it was anticipated that the District might lease or sell its rights in the property at some future date.

LeClair has been on the 90 acre parcel in recent years. He noted that it did not appear that it was being managed under a forest management plan "as it was supposed to be." Again, however, there is nothing in the deed requiring a forest management plan. Since 2004 LeClair has noted new trails on the property, which were built by a group called The Fellowship of the Wheel. The trails are used for bicycling and for walking.

The Fellowship of the Wheel is a non-profit organization that is in the business of creating and maintaining mountain biking trails. It works with the Town's Director of Parks and Recreation, which has given the group authorization to build and maintain trails. They are in frequent communication. The Fellowship cleans up the trials and post signs asking people to stay off the trails when they are too muddy. The trails are quite popular with mountain bikers. Only members of the organization are entitled to obtain trial maps, but the trails are open to the general public. The trails are compacted dirt, with some wooden bridges up to two feet wide over wet areas.

Last year the Fellowship did a four-day project with the Essex Middles School, in which the students assisted in building a new trail. They also did projects with twelve to eighteen Center for Technology students four mornings a week for three to four hours. They do invite donations from users of the trails.

LeClair agrees that use by bicycles is "recreational" and does not object to bicyclists' use of the property. His objection is that parties other than the School District or the Town are using the property. He agrees the property is still open for conservation, recreational and educational uses.

Forestdale is currently trying to develop the remaining lands adjoining the 90-acre parcel. Although LeClair hopes that the plans can proceed without regaining ownership of the 90 acres, the current development plan submitted to the Town for approval anticipates that Forestdale will regain the 90 acres.

Conclusions of Law

Forestdale argues that Exhibit 2 is the operative deed, that it is ambiguous as to who was intended to use the parcel, that parol evidence establishes that it was to be limited to the school district, and that both the lease to the Town and the use of the land by the fellowship of the Wheel operate as a forfeiture of the District's rights under the deed.

The court concludes that both deeds are missing language and therefore both are ambiguous to some extent. If one were missing language and the other were not, the complete document would seem more likely to be correct. Here, neither on its face is obviously more likely to be the correct deed. Forestdale argues that there was no evidence as to how Exhibit 1 came into existence or was delivered to the School District. However, the deed is fully executed by the parties to the transaction and was recorded on August 15, 1978, the date of its execution. The fact that it was recorded is prima facie evidence of its delivery. Rich v. Wry, 110 Vt. 307, 311 (1939). "The recording of a regularly executed and acknowledged deed by either the grantor or the grantee raises a rebuttable presumption of delivery, which is entitled to great and controlling weight." 23

5

Am. Jur. 2d Deeds § 141 (West, Westlaw through March 2010). "When a presumption of delivery arises, nothing except the most satisfactory evidence of nondelivery can prevail against it; a mere preponderance of the evidence is not sufficient." Id.§ 148. Given that no one has offered any explanation for why an incorrect deed would have been recorded, the recorded deed is the more reliable of the two documents. The court finds no credible evidence that it was not delivered.

Although LeClair testified that he found the other deed in Forestdale's files, that does not rebut the presumption of delivery from recordation. Even if it might otherwise rebut the presumption, the fact that it is incomplete undercuts its effectiveness in doing so. Nor does the court find any other credible evidence that the unrecorded deed is the correct one. Although LeClair testified that the language regarding forfeiture was what he intended, given that the events occurred over thirty years ago, that the transfer of the lands appears to have been at the behest of the Town rather than because of some particular desire by Forestdale to insure recreational and educational use of the property, that LeClair's other testimony that he intended non-transferability of the property is contradicted by the clear language of both deeds, and that LeClair apparently has a financial motive for obtaining the return of the land, the court did not find persuasive his explanation of the original intent of the transfer.

The recorded deed states that the lands conveyed "shall be for public usage for conservation/recreation and educational purposes only." It contains no language referring to any forfeiture of the property. It is undisputed that the land is being used for recreational and educational purposes only. It is also open to the public. Thus, the uses to

6

which it is being put are entirely consistent with the deed. Nor is there anything in the deed barring the lease of the land to the Town.[1]

Although Forestdale argues that page two of Exhibit 2 flows more directly from page 1 because it refers to a road as does page 1, there is nothing about page 2 of Exhibit 1 that is inconsistent with page1. Both page twos start in the middle of a sentence and thus both are lacking continuity with page 1.

Forestdale also argues that the deeds are ambiguous as to who may use the land. The court finds no ambiguity. Instead, on its face the deed limits the types of uses that can be made, but not the types of users who may be allowed. There is nothing ambiguous about that.

Finally, Forestdale argues that by allowing the Fellowship of the Wheel to alter the natural landscape by building bicycle trails, and to collect donations from users of the trails, the Town has gone beyond "recreational" use of the land. The court disagrees. While trail building and the collection of donations may not themselves be recreation, they are incidental to recreational use of the property. They do not constitute a violation of the terms of the deed.

Order

The court concludes that Exhibit 1 constitutes the controlling deed, and that page two of the deed should read "The use of such lands herein conveyed shall be for public usage for conservation/recreation and educational purposes only."

The court concludes that the deed does not prohibit the lease of the property so long as the uses continue as described in the deed. The parties are hereby ordered to

---

[1] Even if Exhibit 2 were the controlling deed, the court would conclude that no forfeiture has occurred. That deed allows use of the land for "conservation/recreation and educational purposes only." The court finds that all the current uses of the land meet this description. Nothing in either deed requires the land to stay in the control of the School District as opposed to the Town.

submit a stipulated proposed judgment within ten days. If they cannot agree on the language, each party should submit their proposed language for the court to consider.

Dated at Burlington this 5th day of May, 2010.

_____
Helen M. Toor
Superior Court Judge